## E. J. REEL, APPELLANT, VS. J. H. LIVINGSTON ET AL., APPELLEES.

1. A contingent liability of a surety is sufficient to create the relation of creditor and debtor within the meaning of the statute of frauds against the fraudulent alienation of property, and a pre-existing debt evidenced by a note repeatedly renewed by the same maker and surety continues said debt as originally made between the maker and surety.

2. A liberal construction is given by the courts to the term "creditor" in the statute against the fraudulent alienation of property.

3. An allegation in a bill that a husband made a voluntary settlement on his wife by paying a note secured by a mortgage on her real estate, and that the settlement was made for his convenience, and for the purpose of delaying, hindering and defrauding his creditors, is an allegation of fraud in fact, and coupled with the further showing that the complainant at the time of the settlement sustained the relation of creditor to the husband, is sufficient, if true, to maintain the bill.

4. A bill alleged, in substance, that a married woman acquired by purchase the fee simple title to a lot of land and hotel situated theron, subject to a mortgage of five thousand dollars, evidenced by several promissory notes, and that her husband, for his own convenience, and to hinder, delay and defraud his creditors, of whom complainant was one at the time, made a

voluntary settlement on his wife by paying one of said notes : *Held*, On demurrer to the bill, that to the extent of the payment made by the husband, complainant had a right to subject the property purchased by the wife to the payment of his debt: *Held, further*, In the absence of any showing that either the husband or wife had made any payments on the other notes or on the property, there was no foundation for the complainant to subject the property to any further amount than that alleged to have been paid by the husband.

5. In addition to the allegations as shown in the preceding head-note, the bill alleged that the hotel situated on the property purchased by the wife had been destroyed by fire, and that it was insured against loss by fire in several mentioned insurance companies to the aggregate amount of five thousand dollars, and the lot on which the hotel was situated being insufficient to pay complainant's demand, the insurance money is asked to be declared equitable assets of the husband : *Held*, In the absence of any showing that either the husband or wife effected the insurance on the property or paid any money to secure the same, or that the insurance was for the benefit of either of them, that the bill presented no sufficient claim for the said insurance money.

Appeal from the Circuit Court for Orange county.

The facts of the case are stated in the opinion of the court.

*Massey & Wilcox* for Appellant.

*E. R. Gunby*, for Appellees.

MABRY, J.:

This is an appeal from a decree sustaining a demurrer to an amended bill filed in the Orange County Circuit Court by appellant. The allegations of the amended bill are in substance that the complainant therein, appellant here, on the 4th day of June, 1886, jointly executed a note with defendant J. H. Livingston, at

his request, to the order of the First National Bank of Orlando in the sum of $1,681.85, but that complainant was in fact a mere surety on the note for the said Livingston; that on the 28th day of October following said note with the accrued interest thereon was renewed or a new note given in its place by the said Livingston in the sum of $1,817, with complainant still continuing thereon as surety, said renewed note to mature in three months; that subsequently at divers times the said Livingston, with complainant still continuing as surety thereon, jointly executed notes to the order of said bank to secure the sum of money first obtained, with accrued interest, the last renewal being on the 20th day of November, 1888, at which time the original loan to Livingston, with its accruals of interest, was included in a note to the said bank for the sum of $3,420, executed by the said Livingston and complainant jointly; that upon the maturity of the last-mentioned note complainant was compelled to and did pay the same, the said Livingston being either unable or unwilling to do so, and that in order to recover said sum of money from Livingston, complainant instituted a suit in the Orange county Circuit Court in May, 1889, and recovered judgment against him for $3,520; that execution has been issued upon said judgment and has been returned by the sheriff *nulla bona*, whereby complainant is unable to recover from said Livingston, the money paid for his benefit and on his account. The bill, and its amendments, further alleges that in May, 1885, defendant Mary W. Livingston, wife of defendant J. H. Livingston, acquired by grant to her in fee simple Lot five (5) in Whilden's subdivision of Lucerne, property in the town of Orlando, together with the hotel thereon, known as the Lucerne House, and the furniture therein, subject to the lien of a

mortgage given to secure four purchase-money notes dated November 22nd, 1884, the first for the sum of five hundred dollars, and the other three each for $1,666.00, and to mature respectively in thirty days, twelve months, two years, and three years from date; that the third one of said notes matured according to its terms about the 22nd day of November, 1886, and previous to that time it had been sent to the bank for collection; that the title to the Lucerne House property was at the time of the maturity of said note, and at the time of filing the bill, in the name of the wife, Mary W. Livingston, and that the husband, J. H. Livingston, then being indebted to complainant on account of the suretyship on the said note to the bank, dated the 28th day of October, 1886, in order to discharge the lien of the said third purchase-money note, secured the loan of a sum of money upon his interest in a certain lot in the city of Orlando known as Block AA of W. A. Patrick's addition to said town, and with that and other of his money paid the said purchase-money note for $1,666.66; that at the time Livingston made this payment he had little or no property in his name subject to execution, with the exception of said lot in Patrick's addition; that his investment in said Lucerne House property was a voluntary settlement upon his wife; that it was for the convenience of Livingston, and for the purpose of defrauding, hindering and delaying his just creditors, and that his wife knew he was apparently insolvent, and consented to such a voluntary settlement upon her; all of which facts complainant until recently was in ignorance. It is further alleged that the said hotel described as the Lucerne House had recently been destroyed by fire, and that it was insured against loss by fire in the Hartford Insurance Company for the sum of $1,500, in

the Western Insurance Company for the sum of $1,000, in the American Insurance Company in the sum of $500, in the Continental Insurance Company for the sum of $500, and in the Springfield Insurance Company for the sum of $1,500—aggregating in insurance the sum of $5,000; that the lot of land on which said hotel was located was not sufficient to repay complainant the amount of money which he had been compelled to pay, and that if the insurance money was paid to the said Mary W. Livingston or her husband, complainant would be deprived of the means of recovering what was justly due him. The bill prays for injunction and process, and the special relief as to the property is that the lot on which the hotel was situated be decreed to be held in trust for the benefit of complainant to the extent of the money invested in the same by the husband while he was a debtor of complainant, and that the insurance money be decreed to be equitable assets of J. H. Livingston to the extent of the money invested by him in the Lucerne House property in favor of complainant.

The grounds of the demurrer are that there is no equity in the amended bill; that complainant does not show by his bill that any of his money went into the Lucerne House lot or hotel; and that under the statements of the amended bill no trust could arise, and for other good reasons appearing upon the bill.

Mrs. Livingston acquired the title to the Lucerne property, subject to the lien for purchase-money, about one year before the debt, for which Reel was surety, was contracted, and it is not alleged that the purchase of the property by her was for the purpose of defrauding her husband's creditors, or on his account. It is distinctly alleged, however, that the husband discharged with his own means the third pur-

chase-money note, amounting to $1,666.66, secured by the mortgage on the property purchased by the wife, and that the payment of this note was a voluntary settlement upon her. It is made to appear clearly from this allegation of the bill that $1,666.66 of the husband's money went to discharge in part the purchase price of property bought by the wife, and that to the extent of the sum mentioned the husband contributed his own means to the acquisition of property by the wife. Complainant's status as a creditor of J. H. Livingston at the time he contributed his money to the satisfaction of the purchase-money note against the wife's property, is material, under the allegations of the bill, in determining complainant's right to follow the money mentioned, though it were given to the wife as stated. And this point introduces appellees' first contention, that it is not shown by the bill that appellant was a creditor of J. H. Livingston when he paid the purchase-money note secured by a mortgage on his wife's property. It is not denied that the relation of debtor and creditor may exist within the meaning of the statute of frauds in cases of contingent liability where at the time of the transaction complained of as fraudulent, no right of action existed in favor of the party assailing the transaction. In Alston vs. Rowles, 13 Fla., 117, it is said: "Whenever such a claim is reduced to judgment, the courts will not sustain a conveyance made between the execution of such contract and the time at which a right of action accrues, upon the ground that the liability was contingent." The authorities are abundant to sustain the view that the contingent liability of a surety is sufficient to create the relation of debtor and creditor within the meaning of the statute of frauds against the fraudulent alienation of property. The position

of counsel for appellees is that, as shown by the bill, the claim on which complainant was surety first ac- crued three months from October, 1886, and that instead of insisting on the collection of the claim then, complainant joined with Livingston in giving a new note. and thereby entered into a new contract and con- tinued to make new contracts until the 20th day of November, 1888, when the note upon which the judg- ment was obtained was executed. The contention, as we understand it, briefly stated, is that the execution of the last note to the bank in November, 1888, affords the only basis of liability between J. H. Livingston and complainant to which we can look in ascertaining whether the relation of debtor and creditor existed between them at the time the purchase-money note against the wife's property was discharged. The courts uniformly have given a liberal construction to the statute of frauds in furtherance of its objects, and it is said in Alston vs. Rowles, *supra*, that "the courts, both in England and the United States, have given a most liberal construction to the term 'creditor' in the statute." The bill clearly shows that the various notes given by Livingston and complainant to the bank after June, 1886, were renewals of the one given at that time, and included the principal sum then secured with the accruals of interest thereon. The real consid- eration or fundamental basis of all the notes executed to the bank was the money obtained by Livingston from the bank on the first note in June, 1886. In Faloon vs. McIntyre, 118 Ill., 292, it appeared that a father had made a voluntary conveyance in trust for the benefit of his wife and children, and twelve months after the execution of the trust deed he executed a note upon which judgment was rendered. The judg- ment creditor assailed the conveyance in trust on the

ground that it was voluntary, and that while his note
upon which the judgment was rendered bore date sub-
sequent to the deed of trust, it was in fact given for
a demand existing before and at the time such convey-
ance was made. The court examined the testimony
to see if the demand for which the note was given
did in fact exist at the date of the voluntary convey-
ance.

Our conclusion is that appellant was a creditor of
Livingston, within the meaning of the statute of
frauds, at the time he discharged the purchase-money
note against his wife's property and continued as such
to the time of filing the bill. Alston vs. Rowles,
*supra;* McLauchlin vs. Bank of Potomac, 7 How.,
220; Lowry vs. Fisher, 2 Bush, 70; Woodridge vs.
Gage, 68 Ill., 157; Pennington vs. Seal, 49 Miss., 578;
Bump on Fraudulent Conveyances, 497, 498.

It is next contended that it does not appear from the
bill that when Livingston paid the purchase-money
note against his wife's property he was insolvent, or
did not have other property ample to protect com-
plainant as surety on the note. It is alleged in the
bill that the investment in the Lucerne property by
paying the purchase-money note for $1,666.66 was a
voluntary settlement by Livingston on his wife, and
that at the time he had little or no property in his own
name subject to execution, except a lot mortgaged by
him to secure the money with which to make the invest-
ment. Were this the only allegation in the bill im-
peaching the alleged settlement on the wife we would
be called upon to say whether or not it is sufficient to
sustain the bill. It was decided in Alston vs. Rowles
that where property is purchased and paid for by the
husband, and a deed is taken in the name of the wife,
such acts coupled with an existing indebtedness of the

husband, made a *prima facie* case of fraud. In such case the creditor can follow the funds of the debtor and subject the property in the hands of the wife or her legal representatives, unless the presumption of fraud is negatived by the condition of the debtor and his circumstances at the time, or other rebutting evidence. It is stated by Kelley (on Contracts of Married Women, Chapter 6, sec. 9), that "all gifts from a husband to his wife are good *inter se*, and against all persons claiming under them; and good against all persons, if he is not in debt at the time; but such gifts are voidable as to existing creditors, if their rights are not secured, and as to purchasers without notice, and as to subsequent creditors, if made with intent to delay or defraud them." The bill in the case before us further distinctly alleges that the payment of the third note given for the purchase-money of the property purchased by the wife was for the convenience of the husband, and for the purpose of defrauding, hindering and delaying his just creditors, of which fact complainant was in ignorance until recently before the filing of the bill. So we have in the bill demurred to not only an allegation that complainant was a creditor to a considerable amount of Livingston when the latter made a voluntary settlement upon his wife, but an averment that the settlement was made for the purpose of delaying, hindering and defrauding his creditors. This is an allegation of fraud in fact, and, coupled with the showing that complainant at the time of the settlement sustained the relation of creditor, is sufficient of itself, if true, to maintain the bill. Robinson vs. Springfield Company, 21 Fla., 203. There is no contention here that if complainant sustained the relation of creditor of Livingston, and that the latter's finan-

cial condition was such at the time of the settlement as to condemn the transaction as fraudulent in law, or that if the settlement was fraudulent in fact, the amount contributed to pay off the purchase-money note against the wife's property can not be reached in a court of equity. The fact that the purchase of the property was by the wife and in her name, and its title was never in the husband, will not stand in the way of reaching the money contributed by him in securing the property to the wife. Alston vs. Rowles, *supra.* The result so far is, that upon the allegations of the bill the complainant showed a right to charge upon the lot of land upon which the Lucerne Hotel was located the amount paid by J. H. Livingston towards the satisfaction of the purchase-money demand against it, and that the bill should not have been dismissed on demurrer. The amended bill alleges that Mrs. Livingston acquired title to the Lucerne property in May, 1885, subject to the lien of purchase-money notes amounting to $5,000, but it is not alleged that she paid any sum of money on this purchase. The only allegation as to payment of purchase-money on this property is the payment of the third note by J. H. Livingston in November, 1886. In the absence of allegations as to payments either by Mrs. Livingston or her husband other than the $1,666.66 paid in 1886, there is no basis for a claim to subject the lot in question for more than the sum mentioned as having been paid. Nor can we see from the allegations of the bill any just basis for a claim on the insurance money as equitable assets of J. H. Livingston. It is not alleged that he paid any money in effecting the insurance on the property, or that it was insured in his favor, or even for the benefit of his wife, or that she paid any money to secure the insurance. When

the insurance policies were issued, in whose favor issued, or how the premiums on the same were paid, is not definitely alleged, and such facts are not ascertainable by inference from the allegations made, and we do not see that complainant is entitled to any relief so far as a claim to the insurance money is concerned. Counsel has cited no authorities, and in fact have presented no argument in their brief to sustain the allegations of the bill in reference to the insurance money. But showing a ground of equitable relief as to the payment of purchase-money on the premises by J. H. Livingston, complainant's bill should not have been dismissed, and we reverse the decree appealed from, and remand the cause for further proceedings. Ordered accordingly.