## WILLIAMS v. TRAVIS et al.

(Circuit Court of Appeals, Fifth Circuit. January 10, 1922.)

No. 3688.

1. **Fraudulent conveyances ⊕=214—Liability of national bank stockholder is contractual "debt or demand" within Florida statute.**

The liability of stockholders of insolvent national banks created by 38 Stat. 273 (Comp. St. § 9689), is contractual in its nature, since it cannot attach without the consent of the party subject thereto, such consent being evidenced by his becoming a stockholder, and is a "debt or demand" within the meaning of the Florida statute of frauds, declaring every gift or grant, executed with intent to hinder or defraud creditors of their just debts or demands, void as against the creditors.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Debt or Demand.]

2. **Fraudulent conveyances ⊕=218—National bank stockholders' liability becomes fixed on failure of the bank.**

The statutory liability of a national bank stockholder becomes fixed upon the failure of the bank, so that a conveyance of property by the stockholder to prevent enforcement of such liability made after the bank's failure, but before action was begun to enforce the liability, is fraudulent and void.

3. **Fraudulent conveyances ⊕=74(3)—Voluntary conveyance of all property is conclusively fraudulent.**

Voluntary conveyance by a debtor of substantially all the property he owns, which is subject to execution, the necessary consequence of which is to hinder, delay, and defraud his creditors, raises a presumption of fraudulent intent, which is irrebuttable and conclusive, and renders inadmissible inquiry into his motives.

Appeal from the District Court of the United States for the Southern District of Florida; Rhydon M. Call, Judge.

Suit by C. L. Williams, as receiver of the Heard National Bank of Jacksonville, against S. F. Travis and others. From a decree dismissing the bill, complainant appeals. Reversed and remanded.

John C. Cooper, John C. Cooper, Jr., and H. P. Osborne, all of Jacksonville, Fla., for appellant.

C. M. Cooper, Charles P. Cooper, and J. J. G. Cooper, all of Jacksonville, Fla., for appellees.

Before WALKER, BRYAN, and KING, Circuit Judges.

WALKER, Circuit Judge. After the appellant, the receiver of the Heard National Bank of Jacksonville, Fla., had recovered a judgment, in the sum of $13,601.43 and the costs, in a suit brought by him against S. F. Travis, who at the time of the failure of said bank and of the appointment of the receiver, was a director thereof and the owner of 124 shares of its capital stock, to recover the amount due from said Travis under an assessment of $100 a share made against the bank's shareholders by the Comptroller of the Currency, and after a return of nulla bona on an execution issued on that judgment, the bill in equity in this case was filed to subject to the satisfaction of that judg-

ment 496 shares of the capital stock of the S. F. Travis Company, a Florida business corporation, and the income from said shares, 495 of which, at the time this suit was brought, stood in the name of Eliza W. Travis, the wife of S. F. Travis, and 1 of which stood in the name of R. L. Travis, a son of S. F. Travis, or, in the alternative, to subject to the satisfaction of that judgment described real and personal property transferred by S. F. Travis to the S. F. Travis Company after the failure of said bank and the appointment of the appellant as receiver. The pleadings and evidence adduced showed the following:

Between the date of the appointment of the receiver on January 17, 1917, and the date of the making of the assessment against the bank's shareholders on October 10, 1917, the S. F. Travis Company was incorporated; S. F. Travis, with knowledge of the failure of the bank and the appointment of the receiver, transferred to that company all property belonging to him or standing in his name, except his above-mentioned shares in the Heard National Bank, evidence adduced tending to prove that the property so transferred was worth in excess of $300,000; and S. F. Travis transferred to his wife 495 of the 496 shares of the stock of the S. F. Travis Company issued to him when that company was organized, its total capital stock being 500 shares. The other 1 share of that stock issued to S. F. Travis was transferred by him to his son, R. L. Travis, soon after the making of the assessment against the shareholders of the bank and before the bringing of this suit. Nothing was paid to or received by S. F. Travis (hereinafter referred to as Travis) for the property so disposed of by him.

Nothing in the opinion rendered by the District Judge indicates that there was a finding that Travis was not the sole beneficial owner of the property disposed of by him as above stated. The evidence adduced did not warrant a finding that he was not the sole or part beneficial owner of that property until he parted with the legal title to it. The testimony of Travis himself is what must be relied on to support a finding that any one other than himself was beneficially interested in that property or any of it. He testified to the following effect:

The source of properties which stood in his name was a business which was started in 1882, and was carried on successively under the names J. W. Brown & Co., New York Clothing Company, and S. F. Travis & Co., until it was taken over by the S. F. Travis Company. Mr. Brown was a Western man, who spent part of several winters in Florida. While there on one of his visits he furnished $3,000, the entire capital with which the business of J. W. Brown & Co. was started. Brown and Travis were equal partners in that business, to which Brown contributed only the cash capital with which it was started, and Travis contributed his services. Not long after the business was started, Brown sold his interest, accepting therefor six notes, for $500 each, payable to him and signed "New York Clothing Company," the name given to the business when Brown sold his interest. Some time after Brown returned to his home in the West, he sent the six notes, with a letter stating that he wanted them to be given to

Mrs. Travis. Thereafter the business was continued without interruption, and without, so far as appears, the relation of Travis to it ceasing to be that of an owner. For more than 30 years it was conducted under the name S. F. Travis & Co. There was no evidence to support a finding that Travis parted with his interest in that business and in properties standing in his name and representing invested assets of that business until he did so, as above stated, after the failure of the Heard National Bank.

The opinion rendered by the District Judge shows that the dismissal of the bill was the result of the conclusions that Travis was not indebted on his stock in the failed bank when he gave away his property, and that the evidence did not show that the attacked transfers were made with actual fraudulent purpose of defeating the enforcement of his liability as the holder of that stock. We are of opinion that the ruling of the court was erroneous.

[1] The liability of stockholders of national banks, provided for by statute (38 Stat. 273, § 23 [Comp. St. § 9689]) is contractual. Matteson v. Dent, 176 U. S. 521, 20 Sup. Ct. 419, 44 L. Ed. 571; Christopher v. Norvell, 201 U. S. 216, 26 Sup. Ct. 502, 50 L. Ed. 732, 5 Ann. Cas. 740; Benton v. American National Bank (U. S. Circuit Court of Appeals, 5th Circuit) 276 Fed. 368. Expressions used in the opinion in the case of McClaine v. Rankin, 197 U. S. 154, 25 Sup. Ct 410, 49 L. Ed. 702, 3 Ann. Cas. 500, are relied on by counsel for the appellees to support the contention that the liability of Travis as a stockholder of the failed bank was not, when the attacked transfers were made, a debt or demand within the meaning of the Florida statute of frauds declaring "every feoffment, gift, grant," etc., "made or executed * * * to the end, purpose or intent to delay, hinder or defraud creditors or others of their just and lawful actions, suits, debts," etc., to be utterly void as against those "so intended to be delayed, hindered or defrauded." Revised General Statutes of Florida, § 3864. The question whether the liability of a stockholder of a failed national bank is a debt or demand within the meaning of the statute of frauds was not involved in that case.

It was decided in that case that the provision of the Washington statute of limitations applicable to a suit brought by a receiver of a national bank to enforce an assessment against stockholders was the one which provided that "an action for relief not hereinbefore provided for shall be commenced within two years after the cause of action shall have accrued" (Ballinger's Ann. Codes & St. § 4805), and not the one prescribing a three-year limitation for the commencement of "an action upon a contract or liability, express or implied, which is not in writing, and does not arise out of any written instrument" (section 4800). We do not think that anything said in that opinion supports the above-mentioned contention of counsel for the appellees. The following is an extract from that opinion:

"In Matteson v. Dent, 176 U. S. 521, the stock still stood in the name of the decedent, and it was decided that the statutory liability was a debt within the state law, but not that it was a true contract."

[2] There was no indication of an intention to depart from or modify the ruling in Matteson v. Dent. The liability of Travis was fixed on the failure of the bank before the attacked transfers were made. Peters v. Bain, 133 U. S. 670, 10 Sup. Ct. 354, 33 L. Ed. 696. That liability, though it is the creature of the statute, is contractual, because it cannot attach without the consent of the party made subject to it; that consent being evidenced by the act of such party in becoming a stockholder, the law charging him with notice of the responsibility he incurs by becoming a stockholder of a national bank. The statute gives to the fact of one becoming such a stockholder the effect of an agreement by him to be individually responsible, to the extent prescribed, for the payment of the bank's debts in the event of its failure while he is a stockholder or within 60 days after he shall have transferred his stock or registered the transfer thereof.

Decisions of the Supreme Court of Florida show that the words "creditors and others," in the statute of frauds of that state, are given the most liberal construction, and embrace the beneficiaries of contingent liabilities, such as those of guarantors or sureties, from the time those liabilities were stipulated for. Alston v. Rowles, 13 Fla. 117; Reel v. Livingston, 34 Fla. 377, 16 South. 284, 43 Am. St. Rep. 202; Hayden v. Thrasher, 18 Fla. 795. Under the statute the liability of one who is a stockholder of a national bank at the time of its failure is, to the extent of the par value of his stock in addition to the amount invested therein, the same as it would have been if, by express contract and to the same extent, he had become the bank's surety for all its contracts, debts, and engagements. The statute providing for the enforcement of stockholders' individual liability on voluntary dissolution of a national bank by a bill in equity, in the nature of a creditors' bill, brought in behalf of all creditors of the bank (19 Stat. 63), is a recognition of the existence of the relation of debtor and creditor between a liquidating bank's stockholders and its creditors. That relation exists between the stockholders of a failed bank and its creditors before the accrual of a right of action to enforce the payment of the ascertained amount required to be paid. We are of opinion that at the time Travis made the above-mentioned gifts of his property his relation to the bank and its creditors was such as to make those gifts void as against those creditors, who are represented by the appellant.

[3] The attacked transfers being purely voluntary so far as they disposed of substantially all property owned by Travis, and the necessary consequences thereof being to hinder, delay, and defraud his creditors, the presumption of fraudulent intent is irrebuttable and conclusive, and inquiry into his motives is inadmissible. Central Bank of Washington v. Hume, 128 U. S. 195, 211, 9 Sup. Ct. 41, 32 L. Ed. 370; Alston v. Rowles, supra.

It is not to be supposed that the statute prescribing the individual liability of stockholders of national banks would have been enacted if it had been contemplated that a stockholder, after the failure of the bank, could defeat the enforcement of his liability by giving away all his property subject to execution. It seems that to give that effect

to such a disposition by a stockholder of all his property in such circumstances is incompatible with the statute having the intended operation and effect. Pierce v. United States, 255 U. S. 398, 41 Sup. Ct. 365, 65 L. Ed. ——.

The decree appealed from is reversed, and the cause is remanded for further proceedings not inconsistent with this opinion.

Reversed.