323 So.2d 311 (1975)
JAMES TALCOTT, INC., Appellant,
v.
CROWN INDUSTRIES, INC., et al., Appellees.
No. 74-642.
District Court of Appeal of Florida, Second District.
December 3, 1975.
Rehearing Denied January 9, 1976.
*312 Peter J. Winders, of Carlton, Fields, Ward, Emmanuel, Smith & Cutler, Tampa, for appellant.
L. Robert Frank, of Allen, Dell, Frank & Trinkle, Tampa, for appellees.
PER CURIAM.
This appeal presents the question whether plaintiff/appellant established that certain transfers by a corporation were preferences under Fla. Stat. § 608.55.[1] We hold that the trial court's finding that no preference occurred is not supported by substantial, competent evidence. Accordingly, we reverse.
S & J Mobile Home Sales, Inc. (S & J) made the following payments to Crown Industries, Inc. (Crown) while Crown was *313 its sole stockholder and the officers of the two corporations were identical:

 April 14, 1971 $35,000
 Aug. 12, 1971 40,000
 Aug. 30, 1971 85,000
 Sept. 24, 1971 55,000
 Sept. 30, 1971 55,000

S & J's formal decision to liquidate is reported in its corporate minutes of June 29, 1971, but those minutes reflect that the decision had been reached in early June. S & J had begun to sell off its assets prior to that time, however, and finally closed its business on September 30, 1971, following its last payment to Crown.
The creditor objecting to these transfers is James Talcott, Inc. (Talcott), which had been purchasing retail installment contracts which S & J generated by sale of mobile homes. Pursuant to financing arrangements between Talcott and S & J, Talcott had set up certain reserve accounts. In 1967, S & J sued Talcott in the United States District Court, Middle District of Florida, seeking an accounting on these reserve accounts. Talcott counterclaimed for an alleged deficiency in the reserves.
During the litigation Talcott sent notices of the claimed deficiencies to S & J's attorney on a continuing basis.
In March 1971, the federal court ruled in favor of Talcott on the issues tried, and held:
"... Talcott has demonstrated upon the counterclaim its right to establish by an accounting the deficit, if any, which may be due and owing from S & J."
S & J then contested Talcott's method of calculating the reserves, and the matter was not finally resolved until October 1972, at which time the United States District Court upheld Talcott's method of calculation and entered judgment for Talcott in the amount of $47,634.36. It appears $24,842.36 of such judgment remains unpaid.
Talcott brought suit against Crown and its officers (who had been officers of S & J) in September 1973, alleging a violation of Fla. Stat. § 608.55. The matter was tried without jury. The officers testified that they had no intent to grant a preference. They also testified that until October 1972, they never believed there was any liability to Talcott, and Talcott's claim was never carried on the books. Finally, they testified that S & J was not insolvent at the time of the transfers because its assets always exceeded its liabilities.
The trial court granted judgment for defendants on April 30, 1974, finding:
"... that there was no intent on the part of any of the Defendants to prefer Crown over any other creditors of S & J, including Plaintiff, during the period or at the time or times of said payments from S & J to Crown. In addition, the Court finds that there is insufficient evidence to establish that S & J was insolvent or that insolvency was imminent during the period or at the time or times last mentioned."
In order to determine whether Talcott proved a cause of action under Fla. Stat. § 608.55, we focus on three questions:
(1) Was Talcott a creditor?
(2) Were payments made during S & J's insolvency or when its insolvency was imminent?
(3) Was there an intent on part of S & J to give preference to Corwn, et al. over Talcott?
In deciding these questions, we may look to New York cases for guidance, since our statute is derived from the New York Stock Corporation Law. Jasson D. Radding, *314 Inc. v. Coulter, Fla.App.2d 1962, 138 So.2d 380.
The trial court in the present case did not determine that Talcott was not a creditor at the time of the transfers. Appellees now claim that the limiting words "if any" in the federal court's opinion of March 1971, are a justification for the officers' belief that Talcott's claim was not legitimate.
However, a creditor of the transferor need not have a judgment lien prior to the transfer in order to receive the protection of the statute. In Re Anjopa Paper & Board Mfg. Co., S.D.N.Y. 1967, 269 F. Supp. 241, 255. An open account has been held sufficient, Denmark v. Ridgell Furniture Co., 1934, 117 Fla. 244, 157 So. 489, as has a potential tort claim, Caesar v. Bernard, 1913, 156 App.Div. 724, 141 N.Y.S. 659, aff'd, 209 N.Y. 570, 103 N.E. 1122. In the present case, we think it became clear in March 1971, that Talcott was owed some money by S & J. Despite the wording of the federal court's opinion, the dispute was in reality only in controversy as to the amount owed.[2]
We need not decide here whether every contingent claim, disputed in good faith by the corporation, is sufficient to make the claimant a "creditor" under the statute. Here we conclude that Talcott's claim had progressed to the point where it was clearly entitled to the protection of Fla. Stat. § 608.55.
The trial court found, and appellees contend, that S & J was not insolvent, nor was insolvency imminent during the time of the transfers. Appellees point to the bookkeeping balance, and also to their testimony that the corporation was not insolvent.[3] But, the test of insolvency under this statute is not whether the books show an excess of liabilities over assets, but rather whether the corporation has a general inability to answer in the course of business the liabilities existing and capable of being enforced. Williams v. American Crafts, Inc., Fla.App.3d 1961, 129 So.2d 165. Even without considering the facts that S & J did not include its obligations to Crown in its current liabilities and omitted any obligations to Talcott from its balance sheet liabilities, once the decision had been made to liquidate the corporation and wind up its business, then the corporation was insolvent within the meaning of the statute. Freehling v. Michigan Repacking and Produce Co., 5th Cir.1970, 426 F.2d 989 (applying Florida law); Cardozo v. Brooklyn Trust Co., 2d Cir.1915, 228 F. 333.
Appellees finally contend that the trial court's finding that there was no intent is supported by the evidence. Appellees point to the testimony of S & J's officers that they had no intent to make a preference. The testimony of these officers must be weighed in light of the fact that Crown was the sole owner of S & J and the officers of the two corporations were identical. Hence, with the transfers in essence being made to themselves, it is difficult to see how a preference could not have been intended. In any event, we think this simple denial of intent by these officers was not sufficient to support the finding of the trial court, when the evidence is undisputed that such was actually accomplished by the actions of the parties. *315 Blank v. Yoo Hoo of Florida Corp., Fla. App.3d 1968, 213 So.2d 464, vacated on other grounds, 222 So.2d 420 (Fla. 1969). Corporate officers must be held for the consequence of their acts. Those officers who accomplished the transfers must have known that the inevitable effect would be that S & J would not be able to meet its obligations.
While a denial of intent may in an appropriate case be enough to prevent summary judgment, Houdaille-Duval-Wright Co. v. Congdon, Fla.App.2d 1970, 237 So.2d 305, here the evidence at trial overwhelmingly showed that there was no good faith intent to continue the business. Accordingly, the "intent" required by the statute was demonstrated as a matter of law. Blank v. Yoo Hoo, supra. See also Freehling, supra; Dalziel v. Rosenfeld, 1934, 265 N.Y. 76, 191 N.E. 841.
Accordingly, we conclude that Talcott proved its cause of action under the statute with respect to the transfers to Crown made after June 1971. Whether insolvency was imminent at the time of the first transfer to Crown in April 1971, is a matter we leave for determination of the trial court.
Reversed and remanded for further proceedings consistent with this opinion.
GRIMES and SCHEB, JJ., concur.
HOBSON, A.C.J., dissents.
HOBSON, Acting Chief Judge (dissenting).
In my opinion the judgment of the trial court is supported by competent, substantial evidence. Therefore, I respectfully dissent.
NOTES
[1] "No corporation which shall have refused to pay any of its notes or other obligations when due, nor any of its officers or directors, shall transfer any of its property to any of its officers, directors or stockholders, directly or indirectly, for the payment of any debt, or upon any other consideration than the full value of the property paid in cash. No conveyance, assignment or transfer of any property of any such corporation by it or by any officer, director or stockholder thereof, nor any payment made, judgment suffered, lien created or security given by it or by any officer, director or stockholder when the corporation is insolvent or its insolvency is imminent, with the intent of giving a preference to any particular creditor over other creditors of the corporation, shall be valid, except as to any rights or interests which may be acquired thereunder by any person for a valuable consideration and without notice or reasonable cause to believe that such conveyance, assignment, transfer, payment, judgment, lien or security would effect a preference. Every person receiving by means of any such prohibited act or deed any property of a corporation shall be bound to account therefor to its creditors or stockholders. No holder of stock not fully paid in any corporation shall transfer it to any person in contemplation of the corporation's insolvency. Every transfer or assignment or other act done in violation of the foregoing provision of this section shall be void except as hereinbefore provided. The directors or officers of a corporation who shall violate or be concerned in violating any provision of this section shall be personally liable to the creditors and stockholders of the corporation of which they shall be directors or officers to the full extent of any loss such creditors and stockholders may respectively sustain by such violation."
[2] The federal court opinion of October 1972, discussed how two possible methods of calculation would affect the amount owed to Talcott for a typical installment contract. Under Talcott's method of calculation, the amount owed to Talcott would be $156.75, while under S & J's interpretation, the amount owed to Talcott would be $61.40.
[3] Appellant points out that on deposition, two of the officers had admitted that the corporation was insolvent, but at trial they contended they had been mistaken.