## SELECT SALES, INC., et al. v DEWEY, etc.

### Case No. 84-1103 CA

Nineteenth Judicial Circuit, Martin County

January 22, 1990

## OPINION OF THE COURT

JOHN E. FENNELLY, Circuit Judge.

### *FINAL JUDGMENT*

This cause was tried before the Court, without jury, the parties having waived trial by jury. Upon the evidence presented, the court finds:

In June 1977, a corporation named Buy Rite Tropical Foliage Growers Co-op, Inc. was formed. The name was later changed to Buy Rite Tropical Foliage Growers, Inc. (hereafter "BUY RITE").

Defendant was always the president of BUY RITE until it was dissolved, and at all times material to this action was the sole stockholder and director.

On July 11, 1979, Plaintiffs filed an action in Texas against several Defendants, including BUY RITE.

BUY RITE retained the services of a Texas attorney to defend it in Plaintiffs' action against BUY RITE in Texas. BUY RITE's answer, in the Texas case, was filed August 29, 1979.

On March 3, 1980, during the pendency of the Texas action, BUY RITE decided by corporate resolution that BUY RITE's assets would be liquidated. In accordance with that decision, the company actually started selling off its assets.

Almost a year after Plaintiffs' suit against BUY RITE was commenced, on May 31, 1980, BUY RITE owned Defendant (Anne G. Dewey) $27,909.59. On July 31, 1980 BUY RITE owed her only $6,709.59. Thus, in the space of two months, from May 31, 1980 to July 31, 1980, Defendant paid herself from BUY RITE the sum of $21,200.

The payments of $21,200 from BUY RITE to Defendant were from the proceeds of liquidating BUY RITE's assets. BUY RITE wrote its last check in October 1981, and ceased doing business. BUY RITE has no remaining assets.

The Texas action proceeded to trial, and culminated in a judgment in favor of Plaintiffs and against BUY RITE on December 3, 1981. That Texas Judgment has now been domesticated as a Florida Judgment.

The $21,200 transferred from BUY RITE to Defendant occurred while the Texas action against BUY RITE was in progress, and BUY RITE was actively defending the Texas action. Thus, BUY RITE clearly had knowledge of the claim.

Defendant testified that she owned, and leased to BUY RITE, the property on which it operated. However, the $21,200 transferred to Defendant between May 31, 1980 and July 31, 1980 was applied to reduction of loans from Defendant (and not to rent or any other obligation).

Defendant admits that BUY RITE received loans from her on November 20, 1979 for $2,500 and on December 18, 1979 for $10,000, both of which were "needed" to pay operating expenses. Defendant testified that the company was insolvent at that time, but claimed that at the time it paid her the $21,200 it was not insolvent. However, she acknowledged that the company could not then have paid the Texas judgment. Therefore, the Court concludes that the company was insolvent at the time BUY RITE paid Defendant the $21,200.

As to continuing to do business after the March 1980 meeting, it all

135

came from selling off corporate assets. It took until April 1981 to complete the sell off.

Defendant testified that she did not believe that the Texas action had merit as to claims against BUY RITE, and therefore she did not have the requisite "intent" to prefer herself, such as would justify voiding the transfer as preferential.

Under the common law, "most jurisdictions prohibit the preferential payment of directors' debts." *Poe & Assoc. v Emberton,* 438 So.2d 1082, 1083 (Fla. 2d DCA 1983). The*Poe* case is the seminal Florida case confirming that principle in Florida.

"Intent to prefer" one creditor over another is present when payments are made in contemplation of insolvency and winding up of the business as an impending fact. *Ryder Truck Rental, Inc. v Missouri Beef Packers, Inc.,* 358 So.2d 103, 105 (Fla. 3d DCA 1978) citing *Freehling v Michigan Repacking & Produce Co.,* 426 F.2d 983 (5th Cir. 1970).

In *James Talcott, Inc. v Crown Industries, Inc.,* 323 So.2d 311 (Fla. 2d DCA 1975), the court stated that even though officers may testify that they made payments to another corporation without intending to give that corporation a preference, where there was no intent to continue the business of the paying corporation, the intent to make a preference was demonstrated as a matter of law.

The evidence is clear that there was no intent to continue the business of BUY RITE after its liquidation, and it is clear from the testimony that at the time Defendant paid herself the $21,200 that BUY RITE was insolvent. Defendant's subjective determination that she did not "intend" to give herself a preference will not overcome the fact that objectively she did, in fact, give herself a preference.

Defendant has suggested that at the time of the transfer, Plaintiffs were not "creditors" within the meaning of that term applied to the law on preferential transfers. The application of the term "creditor" to a party with a contingent claim relates back to the time when the cause of action on that claim arose, provided it is reduced to judgment.

In the early case of *Reel v Livingston,* 34 Fla. 377, 16 So. 284 (1894), dealing with fraudulent conveyances under the then-existing statute of frauds, the Florida Supreme Court, quoting an even earlier case, noted, at 16 So. 286:

"[T]he relation of debtor and creditor may exist, within the meaning of the statute of frauds, in cases of contingent liability, where, at the time of the transaction complained of as fraudulent, no right of

action exists in favor of the party assailing the transaction. In Alston v Rowles, 13 Fla. 117, it is said: 'Whenever such a claim is reduced to judgment, the courts will not sustain a conveyance made between the execution of such contract and the time at which a right of action accrues, upon the ground that the liability was contingent.' "

In construing the term "creditor", the court further observed:

"The courts uniformly have given a liberal construction of the statute of frauds in furtherance of its objects; and it is said in Alston v Rowles, supra, that 'the courts, both in England and the United States, have given a most liberal construction to the term "creditor" in the statute.' " *Ibid.*

Continuing its liberal construction of the term, in a 1933 case involving the statute against fraudulent conveyances, the Florida Supreme Court held:

"Whoever has a legal claim or demand of a contractual nature in existence at the time when an illeged fraudulent conveyance is made, is a 'creditor' within the meaning of the statute against fraudulent conveyances. (cite omitted) The holder of a contingent claim is as fully protected by the statute as one that is absolute, and in cases of contingent liability, the liability, whenever happening, relates back to the date when it was originally incurred." *Weathersbee v Dekle,* 107 Fla. 517, 145 So. 198, 200 (1933).

In interpreting the term in the context of illegal corporate preferences, in *Talcott, supra,* the 2d DCA observed:

"[A] credit of the transferor need not have a judgment lien prior to the transfer in order to receive the protection of the statute. (cite omitted) An open account has been held sufficient (cite omitted), as has a potential tort claim (cite omitted)." *James Talcott, Inc. v Crown Industries, Inc.,* 323 So.2d 311, 314 (Fla. 2d DCA 1975).

Thus, the Plaintiffs were, as a matter of law, creditors within the meaning of the term, at the time of the transfer, and in the context of preferential transfers.

Plaintiffs are entitled to pre-judgment interest at the statutory rate from the time of the transfer. Since Plaintiffs bear the burden of proof with respect to when the transfer occurred, and since only a range of time has been proven, Defendant is entitled to the benefit of the date most favorable to her. That date is July 31, 1980.

As prevailing party, Plaintiff is entitled to taxable costs for filing fee and service of process.

In accordance with the foregoing analysis, the Court finds in favor of Plaintiff on all issues, and it is hereby

ADJUDGED

1. Plaintiffs shall recover from Defendant the sum of $21,200, together with prejudgment interest in the amount of $24,274, and court costs of $70.50, for a total of $45,544.50, for which total amount let execution issue.

2. Plaintiff's motion for attorneys fees is denied, as there was no contract providing for attorneys fees, no statute which would permit prejudgment attorneys fees against this defendant, and the defenses raised, while without merit, were not frivolous.

3. Interest on the judgment amount shall accrue at the statutory rate, which is now 12%.

ORDERED at Stuart, Martin County, Florida, on January 22, 1990.