## LANE *et al. v.* NEWTON *et al.*

1. Where creditors seek by equitable petition to cancel a deed made by a husband to his wife, it is necessary to make the grantor a party defendant. If he be dead, his legal representative must be made a party, or a sufficient reason must be alleged and proved to excuse such failure.

(a) In the present case certain persons, alleging themselves to be creditors and holders of a security deed from a husband, attacked a conveyance made by the husband to his wife. They alleged that there was no administration on the estate of the husband, and that no application for administration was pending. The plaintiffs made parties defendant to the action the wife and two of the children of the decedent, who were alleged to be adults, averring that he left "several children among whom" were those named. A demurrer was interposed on the ground that the administrator of the decedent should be made a party, and the answer denied that there was no administration, and named the administrator who had been appointed. The record does not show that he was ever made a party, nor was any proof adduced to show that in fact there was no administration. *Held,* that a decree of cancellation could not be rendered under such circumstances, for want of proper parties defendant.

2. Under the ruling in *First National Bank of Cartersville* v. *Bayless*, 96 *Ga.* 684 (23 S. E. 851), a gift by a debtor insolvent at the time is void as to his then existing creditors, whether made for the purpose of defrauding them or not; but such a gift is not void as against a subsequent creditor, unless at the time of making it there was an intention on the part of the debtor to defraud such creditor.

(a) It is not held that an intention to defraud subsequent creditors as a class might not be sufficient relatively to one of them, although the intention to defraud was not directed against him specially.

(b) Under the ruling in the above-cited case, although money may have been obtained from a subsequent creditor for the purpose of paying off debts existing when the gift was made, this alone would not make the gift void as to such creditor, if the conduct of the debtor throughout the entire transaction was honest, and he had no intention to defraud.

(c) An intent to defraud may be inferred from circumstances.

3. If an insolvent husband makes a voluntary conveyance of his property to his wife, with an intention to borrow money and pay off his existing indebtedness, knowing that he is in embarrassed or failing circumstances and probably will not be able to repay the money thus borrowed, and intending by this scheme to save the property for his wife, such a conveyance is fraudulent, and the creditors lending the money with which the former indebtedness is discharged can attack it on that ground, as prior creditors could have done.

4. If a debtor transfers his property to his wife, whether voluntarily or for value, and thereafter procures another to lend him money with which to pay off the existing indebtedness, representing the property to be his, and thus fraudulently obtains money on the faith of the security furnished by the property, and gives a security deed to the lender, who lends the money without knowledge or notice of the conveyance to the wife; and if the wife actively participates in such fraud or knowingly

permits her husband to hold himself out as the owner of the property to obtain such credit, the deed to her will yield to that of the creditor; and if it affects the security of the creditor, it can be canceled as fraudulent.

(*a*) The fact that a deed is recorded, even though it may be a deed for value, does not necessarily prevent one from whom the grantor procures money by representing the property to be his, from having an equitable remedy against the grantor and grantee, if the latter actively participates in the fraud, or knowingly permits the grantor to hold himself out as the owner of the property and thus procure credit on the faith of it.

5. The rule as to the effect of recording a voluntary deed upon the rights of a subsequent purchaser for value and without notice, or of one occupying the legal status of a purchaser for value, is sufficiently stated in *Martin* v. *White,* 115 *Ga.* 866 (42 S. E. 279).

JULY 21, 1913.

Equitable petition. Before Judge Rawlings. Jenkins superior court. March 1, 1912.

J. D. Newton and A. H. C. Newton brought their petition against Elmira Lane and her sons, Remer, John, and Thomas, alleging in substance as follows: In 1908, T. J. Lane was indebted to the Daniel Sons & Palmer Company in a sum represented by notes aggregating $195.77, and on another note for the amount of $94.80 principal, besides interest and attorney's fees. The creditor also had a mortgage on certain live stock and other personal property, much of which remains in the hands of the defendants. The creditor brought suit on the notes first mentioned, to the December term of the city court of Millen, and also foreclosed the mortgage on personalty. Lane was unable to pay the debt, and in great distress applied to the plaintiffs to lend him the money with which to do so. He offered to give notes for the loan, and to secure them by a deed to a certain parcel of land containing 301 acres, of which he was then in possession, and which he had held for 25 years. He represented that this was his own and was entirely without incumbrance of any kind. On January 6, 1909, the plaintiffs loaned him $644 for the purpose of paying the indebtedness. They took his note therefor, and he executed to them a deed to secure such note, containing therein a power of sale if the note should not be paid at maturity. Lane died in November, 1909, without having paid any part of the note, "leaving defendant, Elmira Lane, his widow, and several children, among whom are the defendants, Remer, John, and Thomas, of adult age; . . no administration has been granted upon the estate of said T. J. Lane, and no

application is pending therefor." Since his death his widow has refused to make any payment, and has declared that she owns the land. Upon examination of the records of the superior court, the plaintiffs have found the record of a deed from Lane to his wife, dated September 12, and recorded September 21, 1908, conveying the same tract of land as that above mentioned. While the deed recites a consideration of $1,800, the plaintiffs charge that it was a voluntary deed; that no consideration was paid; that it was fraudulent and intended to hinder and delay the collection of the debt of the Daniel Sons & Palmer Company, and was so known to be by Mrs. Lane; that, being a voluntary deed, its record did not constitute notice to the plaintiff; that it was void as to Daniel Sons & Palmer Company, because it was without consideration and was intended to hinder, delay, and defraud that company; "and petitioners having furnished the money for the express purpose of paying said debt and being upon no notice of the existence of said deed, and the said T. J. Lane continuing in the actual possession and management of the same, petitioners are in equity subrogated to all the rights of the said Daniel Sons & Palmer Company to subject said land and cancel said deed as well as the property embraced in the mortgage; and they hereby set up such right of subrogation, and ask such decree as will enforce their said right." As further reason for the cancellation of the deed as a fraud upon the rights of the plaintiffs, they alleged that in the latter part of December, 1908, or the first part of January, 1909, just before the making of the security deed to them, Mrs. Lane executed and delivered to her husband, without consideration and as a gift to him, a fee-simple deed to the land. Plaintiffs charge that Lane had been advised that the previous deed would not protect the land against the debt of Daniel Sons & Palmer Company, and they believed that Lane was acting in good faith to them when he assured them that the title was in him and that there was no incumbrance upon the land. But the deed so made to him has been fraudulently kept off the record, and is now in the possession of his family or has been fraudulently concealed or destroyed. The value of the land consists largely of the marketable timber on it, and but for such timber the plaintiffs would not have loaned the money or have regarded the security as sufficient. The defendants have commenced to cut the timber and to saw it into lumber, preparatory to removing and

selling it. If this is done, the value of their security will be largely destroyed, and the plaintiffs will be remediless, as the defendants are insolvent and unable to respond in damages. They have already committed damages to the extent of $150. Plaintiffs pray for an injunction to restrain the further felling, sawing, or removing of the timber; that the deed from Lane to his wife be canceled; and that plaintiffs have judgment for the damages already done. The notes attached as exhibits were dated January 6, 1909, and became due October 1 and October 15, 1909.

The defendants demurred to the petition on the grounds, among others, that no reason was set forth in the petition why the plaintiffs should be subrogated to the rights of Daniel Sons & Palmer Company; and that there was a non-joinder of parties, because the administrator of the estate of Lane, deceased, was not made a party defendant. The demurrer was overruled, and exceptions pendente lite were filed, and error was assigned thereon in the bill of exceptions later sued out. The defendants did not admit or deny the allegations as to the transactions between Lane and the plaintiffs, but denied that the deed from Lane to his wife was fraudulent or without consideration. They alleged that Mrs. Lane signed a deed for delivery to her husband for a consideration of $1,800, but he did not pay the purchase-money, and she declined to deliver the deed. They denied that such deed was a deed of gift, or was ever delivered. They denied that the estate of Lane was unrepresented, and alleged that Remer Y. Lane Jr. was the duly appointed and qualified administrator of the estate of T. J. Lane.

A verdict was rendered in favor of the plaintiffs. The defendants moved for a new trial, which was refused, and they excepted.

*R. P. Jones*, for plaintiffs in error.

*William Woodrum* and *E. L. Brinson*, contra.

LUMPKIN, J. (After stating the foregoing facts.)

1. Where creditors seek by equitable petition to cancel a deed made by a husband to his wife, it is necessary to make the grantor a party defendant. *Palmer* v. *Inman*, 122 *Ga.* 226 (50 S. E. 86); *Paulk* v. *Ensign-Oskamp Co.*, 123 *Ga.* 467-469 (51 S. E. 344). If he is dead, his legal representative must be made a party, or a sufficient reason shown to excuse the failure to do so. In this case the plaintiffs brought their petition against the wife of the decedent and three of his sons, who were alleged to be adults, but it does not

appear that these were all of the children. On the contrary, it was alleged that Lane died leaving a widow and "several children among whom were" the three who were made defendants. It was alleged that the defendants were insolvent and unable to answer in damages, but it was not alleged that the estate of Lane was in-solvent, or that there would be no administration and no need for any. In the answer of the defendants they denied that there was no administration, and stated who was the administrator. It no-where appears in the record that it was shown that there was no administration, or that the administrator was made a party; nor was any excuse advanced for the failure to do so. No diminution of the record was suggested, but in the brief of counsel for de-fendants in error it was alleged, that, "when administration was granted on his estate, the administrator was made a party." Upon reading this, we issued an order to the clerk of the superior court, requiring him to send up a certified copy of the order making the administrator a party; but the clerk certified that he had made diligent search of the records and had found that "there was never an order taken making the administrator of T. J. Lane a party to said suit." The bill of exceptions recited that the case was between the plaintiffs and Mrs. Lane and her three sons, and it contained no intimation that an administrator was ever made a party. As the administrator of Lane and Mrs. Lane were the two necessary parties defendant, the failure to make the administrator a party defendant in error and to serve him, if he was a defendant in the court below, would have been fatal. But no such point was made or suggested. Counsel for the plaintiffs in error, in effect, stated in his brief that he insisted on all of the grounds of error taken by him. Thus we have, so far as this record shows, a case where a deed has been adjudged to be fraudulent and has been decreed to be canceled without the presence of the maker of it, or his adminis-trator, or all of his heirs. This necessitates a reversal.

2. One ground of the demurrer attacked the allegations of the plaintiffs that they were subrogated to the right of Daniel Sons & Palmer Company to attack the deed by Lane to his wife, because it was a voluntary deed made to hinder, delay, and defraud that company, and because when such company was pressing for the collection of the indebtedness to it, and had brought suit thereon, the plaintiffs were induced, on representations of Lane, to advance

the money to pay off the pressing indebtedness. There is a difference between the status of creditors of an insolvent person existing at the time when a voluntary deed is made and that of subsequent creditors. *First National Bank of Cartersville* v. *Bayless,* 96 *Ga.* 684 (23 S. E. 851). After declaring broadly the existence of the distinction, even where the subsequent creditor loans money with which to pay the prior debts, still, in the opinion on pages 687-8, it was said: "If when he [a husband] made the conveyance [to his wife] he had an intention to borrow money and pay off his existing indebtedness, knowing that he was in embarrassed or failing circumstances and probably would not be able to repay the money thus borrowed, and intending by this scheme to save the house and lot to his wife, the conveyance would have been fraudulent, and the bank [the subsequent creditor] would have been subrogated to the rights of the pre-existing creditors whose debts were paid with the money borrowed from the bank." The "subrogation" referred to exists so far as concerns attacking the conveyance for fraud. Four authorities are cited in that case as sustaining the right of a person from whom money is borrowed in order to pay off an existing indebtedness to be subrogated to the status of the creditor whose indebtedness is thus paid, as to attacking for fraud a voluntary conveyance made while the first debt was in existence but before the second was created. The first of these is Wait on Fraudulent Conveyances (3d ed.), § 103, which reads as follows: "A device to which fraudulent insolvents often resort consists in making a voluntary conveyance and following this up by paying all the antecedent or existing creditors, practically with the moneys derived from the credit extended by subsequent creditors. Savage *v.* Murphy [34 N. Y. 508, 90 Am. D. 703] was such a case. It is a most unsubstantial mode of paying a debt to contract another of equal amount. It is the merest fallacy to call such an act getting out of debt, and the case should be treated as if the prior indebtedness had continued throughout, or as a case of a continued or unbroken indebtedness." The second authority cited is Bump on Fraudulent Conveyances (4th ed.), § 296. It is there said: "The general rule in regard to voluntary conveyances undoubtedly is that they are void only so far as may be necessary to satisfy prior creditors, and that if they are paid the conveyance will stand. The mere fact, however, that the prior debts have

been paid off will not alone render the transaction valid, though it is entitled to great weight. A great deal will depend upon the mode in which such debts are paid. Paying off one debt by contracting another is not getting out of debt. . . In such instances the subsequent creditors are subrogated to the rights of the creditors whose debts their means have been used to pay. Any other rule would simply permit the debtor to take the property of subsequent creditors and give it to his donee." The other two authorities sustain the same doctrine. Rudy v. Austin, 56 Ark. 73, (19 S. W. 111, 35 Am. St. R. 85); Savage v. Murphy, 34 N. Y. 508 (90 Am. D. 733).

The difference between claiming subrogation to a contract or to a lien, and claiming the right to attack a voluntary deed as fraudulent, if money borrowed from the attacking party was used to pay off antecedent debts, and without knowledge on his part of the making of the conveyance, is clear. The decisions relied on by counsel for the plaintiffs in error (McCowan v. Brooks, 113 Ga. 532 (39 S. E. 115), Sackett v. Stone, 115 Ga. 466 (41 S. E. 564), and Ragan v. Standard Scale Co., 128 Ga. 544, 546 (58 S. E. 31)) were in cases where an effort was made by one who advanced money to pay off and discharge a lien or security to be subrogated to the rights of the holder thereof. What we are now discussing is the making by an insolvent creditor of a voluntary conveyance, and then borrowing money from another and discharging prior debts, as creating substantially a continuing indebtedness rather than a cessation of debt and the creating of a distinct subsequent debt. It seems to the writer that the decision in the case of First National Bank of Cartersville, above cited, does not go as far as the authorities on which it relies, and that it does not clearly distinguish between the status of independent subsequent creditors of an insolvent who makes a voluntary conveyance and that of a subsequent creditor who lends money to pay prior debts which are thus discharged. That decision requires an actual fraudulent intent by the grantor in such a deed toward a subsequent creditor in order to obtain subrogation to the position of prior creditors paid with the money furnished by the subsequent creditor, although the prior creditor could attack a voluntary conveyance by an insolvent without showing actual fraudulent intent. Really the entire matter of attacking such conveyances rests on the ground of fraud. In

some instances the law declares that certain acts are fraudulent without proof of intent, such as a gift of his property by an insolvent as against creditors (primarily meaning existing creditors). In other instances (such as sales or gifts, relatively to subsequent creditors generally), the intent to defraud is a necessary element. Such an intent may be inferred from circumstances. What circumstances will authorize such an inference need not now be discussed. The ground for holding that in some instances a subsequent creditor is subrogated to the status of a prior creditor as to attacking a voluntary deed for fraud is that his money went to pay the debt antedating the gift, and therefore, relatively to the person furnishing the money, in substance there was a continuity of debt rather than a discharge from debt and the creation of a new debt. 1 Moore on Fraud. Conv. 268-270, and notes. The writer does not deem it necessary to consider here whether "subrogation" is the most apt expression in such cases, or whether it is more strictly a continuous state of indebtedness; but the authorities use that term.

If a trap were set by a husband and wife for the purpose of defrauding a subsequent creditor and he were defrauded, it would not seem that he needed any subrogation in order to attack the fraud. If only the intent of the husband is deemed necessary, this would make the subrogation of a subsequent creditor depend on an intent of one party to a voluntary conveyance. See, in this connection, note to Hagerman *v.* Buchanan, 14 Am. St. R. 732, 739, 745 (45 N. J. Eq. 292, 17 Atl. 946). But, under our statute, the decision above cited stands as the law unless modified on formal review.

There is also a statement, in one of the grounds of the motion for a new trial, that the question of subrogation was abandoned, though much of the allegation of fraud was on that subject. The charge of the court should have distinguished between prior and subsequent creditors.

If the reconveyance from Mrs. Lane to her husband was a deed of gift, and it was delivered, then the plaintiffs acquired a good title, and the deed from Lane to his wife does not need to be canceled. Perhaps there may be a decree declaring the fact and requiring a record. What is said in *Martin* v. *White,* 115 *Ga.* 866 (42 S. E. 279), covers the question as to the effect of recording a deed which is in fact voluntary, relatively to a subsequent purchaser for value without notice.

As we find it necessary to reverse the judgment for want of proper parties, which point was raised both in the demurrer and in the answer, and because of the failure to make any distinction in the charge between antecedent and subsequent creditors, which infected much of the charge, we deem it unnecessary to discuss in detail the various grounds of the motion for a new trial.

*Judgment reversed. All the Justices concur.*