## DUNCAN *et al. v.* FREEMAN, receiver.

1. Under the Civil Code (1910), § 3224, " every voluntary deed or conveyance not for a valuable consideration, made by a debtor insolvent at the time of such conveyance " is fraudulent in law against creditors and other persons, and as to them null and void. Though the statute is strict, the courts will give a liberal construction to its provisions.

2. After a national bank has become insolvent and has been by order of the controller of the currency placed in the hands of a receiver, a voluntary conveyance by an insolvent shareholder of such bank, though made before the levying of an assessment against the shareholder by the controller of the currency, may, at the suit of the receiver, be declared null and void as to him and subject to the lien of a judgment obtained by the receiver against the shareholder in a suit previously brought by the receiver against the shareholder to recover the amount of the assessment. In such circumstances the liability (duty) of the shareholder is a legal obligation running to the receiver for the benefit of the creditors of the bank, and the receiver occupies the status of a " creditor " or " other person," within the meaning of the statute.

No. 2411. DECEMBER 13, 1921.

Equitable petition. Before Judge Wright. Walker superior court. November 9, 1921.

*R. M. W. Glenn* and *Henry & Jackson,* for plaintiffs in error.
*Rosser & Shaw,* contra.

GEORGE, J. The First National Bank of LaFayette, Georgia,

a national banking corporation, was, by order of the controller of the currency, on July 19, 1913, placed in the hands of a receiver. Thereafter, on April 29, 1914, the controller of the currency levied an assessment of seventy-five per cent. on each share of the capital stock of said bank, in order to pay the legal liabilities of the bank. Hugh Lawson Duncan was the owner of twelve shares of stock in the bank. In the suit of the receiver against Hugh Lawson Duncan a judgment was recovered against the defendant, in the principal sum of $825, with interest and costs. Thereafter the receiver filed a petition in equity against Hugh Lawson Duncan and his wife, Mrs. Laura J. Duncan, to cancel a deed from the former to the latter, conveying a certain tract of land in Walker county, and to subject the land to the judgment in favor of the receiver against Hugh Lawson Duncan as a stockholder in said bank. By consent of the parties the case was heard by the judge without the intervention of a jury. The court entered a decree finding the land subject to the plaintiff's execution, and the defendants ask a review of that judgment and decree by this court. Certain facts are undisputed. The deed from Hugh Lawson Duncan to Mrs. Laura J. Duncan was a voluntary conveyance. At the time of the execution and delivery of the deed Hugh Lawson Duncan was the owner of twelve shares of stock in the bank, of two mules of the probable value of $400, a small tract of land of the probable value of $75, and the land conveyed to his wife. Whether the deed was executed and delivered before the failure of the bank and before the bank was by order of the controller of the currency placed in the hands of the receiver, or whether the deed was executed and delivered after the failure of the bank and after the appointment of the receiver, is a disputed question of fact. Plaintiffs in error contend that the deed was executed and delivered on July 1, 1913, at a time when neither of plaintiffs in error knew of the insolvency of the bank or had ground to believe it to be insolvent. The defendant in error contends that the deed was executed on July 21, 1913, at a time when Hugh Lawson Duncan had knowledge of the probable assessment against the holders of stock in said bank. Counsel for plaintiffs in error, in their brief of file in this court, concede that " as to when the deed was really executed there was some conflict in the evidence." Upon an examination of the evi-

dence we are satisfied that the judge before whom the case was heard was authorized to find that the deed was not only without consideration but that it was in fact executed and delivered on July 21, 1913, two days after the bank had been placed in the hands of the receiver.

The real contention of plaintiffs in error is that Hugh Lawson Duncan was not, on July 21, 1913, in any sense indebted to the receiver, and that he did not become liable to the receiver until April 29, 1914, when the assessment was made and declared, some ten months after the deed had been executed and delivered. The section of the Civil Code (§ 3224) pertinent to the case at bar declares: " The following acts by debtors shall be fraudulent in law against creditors and others, and as to them null and void, viz.: . . . Every voluntary deed or conveyance, not for a valuable consideration, made by a debtor insolvent at the time of such conveyance." In *First National Bank of Cartersville* v. *Bayless,* 96 *Ga.* 684, 685 (23 S. E. 851), it was said by Simmons, Chief Justice: " The only facts necessary to be shown, in order to render the conveyance fraudulent in law, are the indebtedness, the insolvency of the debtor, and that the conveyance was voluntary. When these facts are proved, the law conclusively presumes a fraudulent intent, and declares the instrument void so far as creditors who held demands against the donor at the time of the conveyance are concerned. Such conveyances may also be void as against subsequent creditors, but as to them the law does not conclusively presume a fraudulent intent. Before the conveyance will be declared void against subsequent creditors, there must be proof of an actual intent to defraud in making the conveyance." See *Lane* v. *Newton,* 140 *Ga.* 415 (78 S. E. 1082). In *Almand* v. *Thomas,* 148 *Ga.* 369 (6), 374 (96 S. E. 962), it was held that " To avoid a conveyance made by one alleged to have been insolvent at its date, for the purpose of hindering, delaying, and defrauding his creditors, so as to subject the property to the claims of subsequent creditors, it should appear that the conveyance was made with the actual intention of defrauding such subsequent creditors." The ruling was followed in *Cohen* v. *George,* 149 *Ga.* 701 (101 S. E. 803). Even if it be conceded that the evidence did not authorize the judge to find that at the time of the execution and delivery of the deed in question there

was an actual intention on the part of the debtor to defraud the defendant in error, nevertheless the correctness of the conclusion reached by plaintiffs in error can not be admitted. Prior to the adoption of the Code of 1863 the validity of conveyances made to defraud creditors was determined by the act of 13 Eliz. c. 5. Schley's Digest, 214. When the Code of 1863 was adopted such conveyances were declared null and void simply as to creditors. Code of 1863, § 1954. Not until the Code of 1895 were the words, " and others," added, thus making the Code of 1895 read that such acts by debtors shall be fraudulent in law against creditors and others, and as to them null and void. The words, " and others," were intended " to include with creditors such persons other than creditors who have any rightful claim or demand against the grantor, for which such person is entitled to have a judgment in any court of law or equity." *McDowell* v. *McMurria,* 107 *Ga.* 812, 817 (33 S. E. 709, 73 Am. St. R. 155). See also *Boswell* v. *Boswell,* 147 *Ga.* 734, 736 (95 S. E. 247). Although the statute is strict, and even penal, the courts have given a liberal construction to its provisions. *Cumming* v. *Fryer, Dudley,* 183. *Banks* v. *McCandless,* 119 *Ga.* 793, 797 (47 S. E. 332). The applicable rule is well stated in 20 Cyc. 421: " Existing creditors are, as the words imply, persons having subsisting obligations against the debtor at the time the fraudulent alienation was made or the secret trust created, although their claims may not have matured or been reduced to judgment until after such conveyance. A contingent liability is as fully protected against fraudulent and voluntary conveyances as a claim certain and absolute; and whoever has a claim or demand arising out of a pre-existing contract, although it may be contingent, is a creditor whose rights are affected by such conveyances, and can avoid them when the contingency happens upon which the claim depends." The rule is supported by numerous decisions cited in support of the text.

It is true that no portion of the liability of stockholders of a national bank for the payment of its debts becomes due or enforceable before the controller of the currency decides that it is necessary to collect it and fixes a time for its payment. The question involved in Richmond *v.* Irons, 121 U. S. 27, 55 (7 Sup. Ct. 788, 30 L. ed. 864), was whether the individual liability of a stockholder in a national bank survived as against his administrator.

It was said: " Under that act the individual liability of the stock-holders is an essential element in the contract by which the stock-holders became members of the corporation. It is voluntarily entered into by subscribing for and accepting shares of stock. Its obligation becomes a part of every contract, debt, and engagement of the bank itself, as much so as if they were made directly by the stockholder instead of by the corporation." The question involved in Concord First National Bank *v.* Hawkins, 174 U. S. 364, 372 (19 Sup. Ct. 739, 43 L. ed. 1007), was whether one national bank could be charged as stockholder in another national bank. In the opinion it was said: " In the present case it is sought to escape the force of these decisions by the contention that the liability of the stockholder in a national bank to respond to an assess-ment in case of insolvency is not contractual, but statutory. Un-doubtedly, the obligation is declared by the statute to attach to the ownership of the stock, and in that sense may be said to be statutory. But as the ownership of the stock, in most cases, arises from the voluntary act of the stockholder, he must be regarded as having agreed or contracted to be subject to the obligation." See also Whitman *v.* Oxford National Bank, 176 U. S. 559 (20 Sup. Ct. 477, 44 L. ed. 587). While the liability is statutory, it is nevertheless contractual in its nature, at least in a qualified or limited sense. See McDonald *v.* Thompson, 184 U. S. 71 (22 Sup. Ct. 297, 46 L. ed. 437) ; Studebaker *v.* Perry, 184 U. S. 258 (22 Sup. Ct. 463, 46 L. ed. 528) ; Platt *v.* Wilmot, 193 U. S. 602 (24 Sup. Ct. 542, 48 L. ed. 809) ; McClaine *v.* Rankin, 197 U. S. 154 (25 Sup. Ct. 410, 49 L. ed. 702) ; Christopher *v.* Norvell, 201 U. S. 216 (26 Sup. Ct. 502, 50 L. ed. 732). The liability of the stockholder of a national bank, though statutory, rests at last on the shareholder's subscription or on his receipt and acceptance of his stock. He agrees to assume and discharge the legal obligations and duties of a shareholder. Deweese *v.* Smith, 106 Fed. 438. Cf. *Crawford* v. *Swicord,* 147 *Ga.* 548, 551 (94 S. E. 1025). While the assessment by the controller of the currency is a con-dition precedent to the collection or enforcement by suit of the liability of the stockholder of a national bank, the liability never-theless exists before the assessment or call; and though the lia-bility be contingent, it is as fully protected against voluntary con-veyances as a claim certain and absolute. If the deed had been

executed and delivered before the appointment of the receiver, perhaps a different question would have been presented. As we have pointed out, the judge found (and he was authorized to find) that the deed was executed and delivered after the bank had been placed in the hands of the receiver. Admittedly the conveyance was a voluntary one. The total amount of property retained by the donor after the execution of the deed, according to his own evidence, was not sufficient to discharge the judgment subsequently obtained against him by the receiver. By the deed the donor rendered himself insolvent, considering his liability as a stockholder in the bank to be then existing. It follows that the law presumes a fraudulent intent, and declares the instrument void so far as the defendant in error is concerned.

*Judgment affirmed. All the Justices concur.*