## HENDRICKSON v. HELMER et al.

### No. 1856.

District Court, D. Idaho, S. D.

July 27, 1934.

Chapman & Chapman, of Twin Falls, Idaho, for plaintiff.

John Graham, of Twin Falls, Idaho, for defendants.

CAVANAH, District Judge.

The plaintiff as trustee in bankruptcy seeks to cancel two warranty deeds executed by the bankrupt to his wife and that the property covered by them be declared to be community property so that the bankrupt's interest may be decreed to the bankrupt's estate.

As appears by the complaint, the bankrupt in January, 1925, became a stockholder of the First National Bank of Twin Falls. Prior to that time he and his wife acquired the real property involved as their community property. On May 31, 1927, the bankrupt, for the purpose of attempting to escape and avoid his liability as such stockholder, fraudulently executed one of the deeds to his wife to a portion of the property, and thereafter for the same purpose on September 26, 1928, executed the other deed to his wife to a portion of the property. The deeds were not recorded until December 4 and 5, 1931. At all times until and including the farming season of 1931, the bankrupt treated the property and exercised control and management of the same as community property. On December 3, 1931, the bank closed its doors and is now being liquidated by the Comptroller of the Currency through a receiver. On March 24, 1934, the bankrupt filed his petition in bankruptcy and was thereafter on March 26th adjudged

628

a bankrupt. In his schedule he did not include the property as an asset of his estate. The receiver on July 18, 1932, recovered a judgment against the bankrupt of $41,024.49, on an assessment levied against him on his stock in the bank for the purpose of paying debts and contracts of the bank which had been incurred during the time the bankrupt was such stockholder and prior to the execution and recording of the deeds. On May 3, 1934, the receiver filed a claim with the referee, which was allowed, based upon the judgment which he had obtained on the assessment.

The demurrer to the complaint presents the principal question as to whether the relationship existing by reason of the bankrupt purchasing the stock was statutory or contractual and whether there was a debt or demand existing at the time of the transfer of the property by the bankrupt to his wife, or not until the bank had failed and the assessment made.

The plaintiff urges that liability on the stock for an assessment existed from the time of its issuance and matured when the assessment was made, while the defendant asserts that not until the time the assessment was made did liability exist. While these contentions are pertinent and should be disposed of on the demurrer, yet under the allegations of the complaint we are confronted with the further question of fraudulent transfers made for the purpose of avoiding liability as a stockholder of the bank on the stock assessment and defeating and defrauding the creditors of the bank.

■■ The liability of a shareholder in a national bank to respond to an assessment in case of insolvency as prescribed by section 64, title 12 USCA, is statutory, and, upon the failure of the bank, the rights of its creditors intervene and attach. Scott v. Deweese, 181 U. S. 202, 21 S. Ct. 585, 45 L. Ed. 822; Concord First National Bank v. Hawkins, 174 U. S. 364, 19 S. Ct. 139, 43 L. Ed. 1007; Salter v. Williams et al. (D. C.) 219 F. 1017. It is for the benefit of the bank's creditors represented by the receiver of the bank, and is conditional and contingent, and the right to sue does not obtain until the Comptroller has acted, which is the basis of the suit. McClaine v. Rankin, 197 U. S. 154, 25 S. Ct. 410, 49 L. Ed. 702, 3 Ann. Cas. 500. The bank being insolvent and having creditors at the time it closed, the individual liability of its stockholders existed to such debts, contracts, and engagements of the bank.

■ There does not seem to be any question but what, under the allegations of the complaint, the bankrupt was and is liable for the assessment on his stock which is now evidenced by the judgment obtained by the receiver, and recourse can be had against any property owned by him. But the crucial question under the facts pleaded and the prayer of the complaint is, Was he the owner of the property covered by the deeds at the time the bank closed and when the Comptroller acted in making the assessment on his shares of stock? This calls for a consideration of the facts alleged relating to the transfer of the property by the two deeds to his wife made more than four years prior to the filing of the petition in bankruptcy and a determination therefrom of the validity of the transfers. The first deed made by the bankrupt to his wife was on May 31, 1927, and the second one was on September 26, 1928, more than four years before the bank was closed and more than five years before the assessment on the stock was made by the Comptroller. The considerations were for $1 and love and affection. With these facts in mind together with the further alleged facts that since the deeds were executed the bankrupt exercised control over the property transferred and claimed it as community property and the two deeds were recorded shortly after the bank closed, do they constitute such fraud as to warrant a decree setting them aside under the principle that a fraudulent transfer of property by a debtor for the purpose of defrauding his creditors is void as against creditors? If a transfer of property by a husband to his wife is made in good faith and not to defraud existing creditors of his, under the laws of Idaho the consideration for "love and affection" and for the purpose of making her a gift is valid and the validity of such as fraudulent conveyance against creditors does not depend upon subsequent events. Gooding Milling Co. v. Lincoln County State Bank, 22 Idaho, 468, 126 P. 772; McMillan v. McMillan, 42 Idaho, 270, 245 P. 98.

■■ Whether a conveyance of property is fraudulent or not, it must appear that there were existing creditors at the time of the alleged fraudulent transfer and that the transfer was made with the intent to delay or defraud such creditors. Section 54-906, I. C. A. As has been said, the liability of the bankrupt as a stockholder was statutory and contingent, depending upon the bank's inability to pay its debts and contracts. To say that the bankrupt was a debtor of the bank by reason of his contingent liability

on his stock four years before it was known and determined that the bank could not pay its debts and contracts and the assessment made by the Comptroller would be indulging in the realm of uncertainty which may never occur. If such reasoning is accepted, then a stockholder of a national bank could never in good faith convey any property while he owned stock without it being subject to cancellation in the event that at some future time the bank became insolvent and unable to pay its creditors. However, the fact is alleged in the complaint that the bankrupt has at all times since he executed to his wife the deeds exercised control and management of the property conveyed by the deeds and has claimed to own his community interest therein and from which fact it might be inferred that he still owned, although the record title is in his wife's name, an undivided one-half community interest in the property at the time the bank closed and when the Comptroller acted in making the assessment on the stock. This fact considered with the allegation that it was fraudulently done would require the taking of proof in order to determine whether he still is the owner of his undivided one-half community interest and requires the overruling of the demurrer.