**MARCHANT v. ROGERS et al.**
**No. 888.**

District Court, E. D. South Carolina.
Feb. 24, 1937.

Zeigler & Brailsford, of Orangeburg, S. C., for complainant.

J. Stokes Salley and W. C. Wolfe, both of Orangeburg, S. C., for defendants.

MYERS, District Judge.

This action is brought under the Statute of Elizabeth by the receiver of the Orangeburg National Bank, seeking to set aside certain conveyances made by the defendant Ella D. Rogers on the 12th day of October, 1928, as in fraud of creditors, and to make the real estate in the city of Orangeburg covered thereby responsive to a judgment in favor of the plaintiff against the said defendant on her liability as a stockholder of said bank, entered on the 15th day of June, 1936. The added defendants are the grantees named in the said conveyances, and the defendant Marchant as a judgment creditor of the said Ella D. Rogers. The matter was referred to John S. Bowman, Esq., as special master, whose report is now before me on exceptions based upon an asserted contingent liability attached at the time of the conveyances to the property covered thereby.

The facts as reported by the master and adopted by the court are substantially as follows:

A run was started on the Orangeburg National Bank (hereinafter referred to as Orangeburg Bank) in 1925—due to anonymous letters in circulation throughout the community reflecting upon the officers and management of the bank. This manifestation of lack of confidence was for awhile stopped; but about one year later heavy demands were resumed, so depleting the cash resources of the bank as to necessitate the consideration of measures for protection of depositors. The matter was taken up by the officers of the bank with the Comptroller of the Currency, and, following full consideration of the situation and conference with the Edisto National Bank, another Orangeburg institution, the Comptroller recommended to the officers and management of the Edisto National Bank (hereinafter referred to as Edisto Bank) that Orangeburg Bank was solvent, and submitted to said Edisto Bank a plan and agreement, which was entered into on the 1st day of March, 1927, whereby Edisto Bank agreed to and did assume all liabilities of Orangeburg Bank, receiving as consideration for the assumption of its liabilities and in the nature of a guarantee of solvency, $100,000, subscribed in cash to stock of a cor-

poration then formed, known as General Land & Investment Company; which cash subscription was mainly by stockholders of Orangeburg Bank, and to which the defendant Ella D. Rogers subscribed and paid $2,500.

In furtherance of this agreement, the real estate and real estate loans of Orangeburg Bank (other than its banking building, which was taken over by Edisto Bank at an agreed valuation) were transferred to General Land & Investment Company (hereinafter referred to as the Investment Company) in a book value amount of $868,808.73, and the note of the Investment Company, in amount $100,000 less than the book value of the securities so transferred, was executed and given to Orangeburg Bank. Selected assets of Orangeburg Bank in the aggregate book value of $770,850.80 were transferred and assigned to Edisto Bank. Orangeburg Bank then executed and delivered to Edisto Bank its note in the sum of $710,-850.80, the agreed difference between the value of the transferred assets and Orangeburg Bank's total liabilities; this note being secured by pledge of the note of the Investment Company to the Orangeburg Bank, and by the remaining assets of Orangeburg Bank of the face value of $249,448.62, retained by Orangeburg Bank as a going concern; its continued operation being for the liquidation of these remaining assets and for the purpose of receiving from Investment Company and paying over to Edisto Bank the proceeds of sales and returns from real estate and real estate loans received from Investment Company, as well as the proceeds of liquidation of the retained assets.

At the time this agreement was entered into, both of the banks, concerned, as well as the Comptroller of the Currency, were of the opinion that the assets of Orangeburg Bank were more than sufficient, if liquidated in an orderly manner, to discharge all obligations of Orangeburg Bank. The capital subscription to stock of the Investment Company, paid over to Edisto Bank as part consideration of its assumption of liabilities of Orangeburg Bank, was at that time considered as precluding any eventuality of stockholders' liability, and as an investment from which a return might reasonably be expected upon final liquidation of the affairs of the Orangeburg Bank and discharge of its indebtedness to Edisto Bank.

The finding of the special master, which I adopt, is that in October, 1928, when the deeds in question were executed, there had been no substantial change in values, and that Orangeburg Bank was solvent.

Under date of October 12, 1928, the defendant Ella D. Rogers, by three separate deeds, conveyed to defendant grantees (her daughter Ella Rogers Deschamps individually, her daughter Ella Rogers Deschamps as trustee for her grandson Austin Bull Rogers, and to her daughter-in-law Emma King Rogers, wife of a son of the grantor, whose interest it was intended to convey to her) each an undivided one-third interest in grantor's undivided one-third interest in real estate in the city of Orangeburg; substantially all property of value of which grantor was at that time seized and possessed. The consideration expressed in each deed was "$10.00 and other valuable consideration." The special master finds that the real consideration was threefold: "(a) The grantor had already made considerable advancements to her other children and desired to give the remaining children, as represented by the grantees, as nearly an equal share of her estate as was possible; (b) the grantees were to permit Ella D. Rogers to use the income from the property conveyed as long as she lived as a sole means of support; (c) and that the grantor had lost 'twenty or thirty thousand dollars' by reason of endorsements for a member of her family, and she was afraid that she might again be called on for such endorsements and thus render the property conveyed liable therefor." I am unable to agree with the special master that there was any moving consideration of value, though his conclusion that there was no taint, or evidence of moral fraud in the transaction, is fully sustained by the testimony, and is concurred in.

The defendant Ella D. Rogers was then, as at the time of the liquidation agreement referred to, the owner of eighty-six shares of the capital stock of the Orangeburg Bank—then, under its liquidation agreement, indebted to Edisto Bank for a balance of $524,000 on its contracted obligation, evidenced by its note of March 1, 1927; Orangeburg Bank being then a going concern with duly elected officers and directors, engaged in the business of collecting its own paper, and assisting and advising with Edisto

Bank and Investment Company in the collection of Orangeburg Bank's assets.

Some two years and six months later, on the 8th day of April, 1931, the plaintiff Marchant was appointed receiver for Orangeburg Bank, and on July 3 of the same year an assessment of 100% was levied by the Comptroller on its stockholders. Judgment was entered in favor of the receiver on the stockholder's liability of Ella D. Rogers on the 15th day of June, 1936; execution issued and returned nulla bona by the marshal.

The complaint alleges that at the time of the execution of the conveyance by the defendant Ella D. Rogers Orangeburg Bank had ceased to do business and was absolutely insolvent. A decision adverse to the plaintiff on these allegations does not, however, seem to me to dispose of the question at issue, which seems to be fairly stated by plaintiff's counsel as follows: "Can a conveyance by a stockholder in a national bank withstand the claim of the Receiver for a stock assessment subsequently levied when, (1) it is of substantially all of grantor's property; (2) it is voluntary; (3) it is made during the liquidation of the affairs of the Bank which proves unsuccessful; and (4) it is absolute on its face, but coupled with a secret reservation of the rents and profits to the grantor for her lifetime?"

Its consideration involves, first, a determination of the relation of the stockholder to existing creditors of a national bank as of the date of the conveyance, as fixed by section 63 et seq., title 12 U.S. C.A.: "Shareholders of every national banking association shall be held individually responsible for all contracts, debts, and engagements of such association, to the extent of the amount of their stock therein, at the par value thereof, in addition to the amount invested in such shares."

Many state cases cited deal with questions of time at which the liability attaches or the right of action accrues, under statutes, most of which are materially different in language and effect from the federal provisions; notably the South Carolina statute, which fixes the liability to depositors upon holders of stock of insolvent banks. Where the statutory liability is to creditors, the right to set aside said conveyances under the Statute of Elizabeth is practically universally recognized in favor of affected existing creditors and denied as to those becoming creditors subsequent to the date of conveyance. Page v. Jones, 7 F.(2d) 541 (C.C.A.8th Cir., Sept. 4, 1925); Deweese v. Smith, 106 F. 438, 66 L.R.A. 971 (C.C.A.8th Cir., Feb. 25, 1901); Rogers v. Bancokentucky Co., 18 Del.Ch. 23, 156 A. 217 (July 14, 1931); Murray v. Sill (C.C.A.) 7 F.(2d) 589; Williams v. Travis, 277 F. 134 (C. C.A.5th Cir., Jan. 10, 1922); Yardley v. Torr, 67 F. 857 (C.C.E.D.Pa., April 26, 1895); Duncan v. Freeman, 152 Ga. 332, 333, 110 S.E. 5 (Dec. 13, 1921).

In Peterson v. Wahlquist, 125 Neb. 247, 249 N.W. 678, 89 A.L.R. 747, a Nebraska case, the constitutional and statutory responsibility was to creditors of the bank and "for all liabilities accruing while he remains such creditor." It was held that the liability under these provisions was primary and that a voluntary conveyance by a stockholder was void against debts of the bank existing at the time of transfer, though the bank was then solvent.

Where the statutory liability is to depositors of insolvent banks, as in South Carolina, neither the liability, nor those for whose benefit it accrues, can be determined prior to apparent or declared insolvency; and in such case intent to defraud and hinder recovery for this liability by prior transfers must be established.

In Hendrickson v. Helmer, 7 F.Supp. 627 (D.C.S.D.Idaho), the statutes of the state were also under consideration. Recovery was denied on the ground that there was no proof of existing creditors of the bank at the time of transfer, and no proof of intent to delay or defraud such creditors; two elements required by the Idaho statutes.

What, then, is the relation of a stockholder to creditors of a national bank under the position fixed by the federal statute? I have not been cited, nor have I been able by search to find, authorities dealing with circumstances such as are here shown.

Throughout the federal decisions, however, this question of relationship of stockholders to existing creditors is fairly well stated.

In Whitney v. Butler, 118 U.S. 655, 656, 7 S.Ct. 61, 30 L.Ed. 266, Mr. Justice Harlan, in passing on the question of sufficiency of the divesting of liability by

transfer of stock, says: "This suit * * * is based upon those provisions of the statute which declare that the shareholders of national banking associations shall be individually responsible * * * for all contracts, debts, and engagements, to the extent or amount of their stock therein, at the par value thereof, in addition to the amount invested in such shares; and that estates and funds in the hands of executors of persons holding stock shall be liable in like manner, and to the same extent, as the testator would have been if living. Rev.St. §§ 5151, 5152 [12 U.S.C.A. §§ 63, 66]. * * * The question before the court is whether, under the statute and the facts specially found, the defendants were liable to be assessed for the contracts, debts, and engagements of the bank."

In Richmond v. Irons, 121 U.S. 27, 7 S.Ct. 788, 30 L.Ed. 864, a creditors' suit against stockholders under the federal act, the court denied the right of recovery to creditors whose claims arose out of transactions, contracts, and engagements made subsequent to the process of voluntary liquidation.

Witters, Receiver, etc., v. Sowles, Executor, et al. (C.C.) 32 F. 130, follows the same doctrine, refusing relief to subsequent creditors. The decision in Forrest v. Jack, Receiver, 294 U.S. 158, 55 S.Ct. 370, 79 L.Ed. 829, 96 A.L.R. 1457, follows Matteson v. Dent, 176 U.S. 521, 20 S.Ct. 419, 44 L.Ed. 571, on facts establishing a divesting of responsibility. In neither case is the relation of the stockholder to the existing creditors of the bank at issue, but is considered as enforceable and unquestioned. So in the case of McClaine v. Rankin, 197 U.S. 154, 25 S.Ct. 410, 49 L.Ed. 702, 3 Ann.Cas. 500, where the same relationship between the stockholder and existing creditors is recognized, and the attaching of liability and effect of statute limiting the time for action is considered.

It is contended that there was no thought in the minds of Congress that the responsibility of a stockholder to existing creditors should be construed to in any way restrict the orderly and untrammeled exercise of ownership of property by sale or disposition otherwise. The overwhelming weight of authority, however, in the mind of the court is that a stockholder of a bank in process of liquidation, voluntary or otherwise, is obligated under the terms of the statute, should the liquidation fail to extinguish the indebtedness of the bank existing at the time such liquidation began, to answer to such existing creditors to the extent imposed by statute, and that a voluntary conveyance by such shareholder during the period of liquidation, whether at the time of the conveyance the assets in the hands of the liquidating agents were or were not sufficient to discharge such existing contracts and obligations, cannot be held by such action to have made a more complete and effective disposition of his or her property than would have been effected by the death of the stockholder at the time of such conveyance. That this, as applied in the instant case, may be harsh doctrine in its effect upon the defendants will not and cannot affect the deliberate judgment of the court. Here we have a conveyance without valuable consideration made, as the court finds, upon a reasonable moving impulse, but in no way to affect the grantor's beneficial interest therein during her lifetime. As a stockholder of Orangeburg Bank, she was, under section 63, liable to respond to the extent of the par value of her stock to creditors of the bank whose rights accrued upon the execution and carrying into effect of the liquidation agreement entered into by Edisto Bank with the two institutions in which she was a stockholder, Orangeburg Bank and Investment Company. The obligation existed at the time of the conveyance, and could not be discharged as to the stockholder unless discharged by the bank in the liquidation of its assets. It was not released by the then apparent solvency of the bank.

There was, as already stated, no taint or suggestion of moral fraud; but liability fixed upon the assessment by the Comptroller, the right of action exercised by the receiver, and the judgment fixing the extent of that liability, would be defeated by any other holding than that the denial of claim of plaintiff's receiver would defraud creditors of their legal and equitable right. Intentional fraud need not be established where the effect of the conveyance and the record thereof, as here, is to hinder, delay, and defraud complainant in the enforcement and collection of his established claim.

It is beyond question, under the authorities, that, if at the time of the attempted voluntary conveyance of her

property the defendant Ella D. Rogers had attempted to evade her relationship and liability to the creditors of the bank by a transfer of her stock to the grantees named in the deed or to any other person, such action would not have availed her in the action on stockholders' liability. The equitable principle here applied in relation to the voluntary conveyance is, in my judgment, the same.

Let an order for judgment be presented in conformity with this opinion.